HATTIE F. REEVES *v.* S. L. MOORE, ETC.

**Guardian and Ward—Purchase of Land by Guardian—Purchase Money Paid Out of Funds Belonging to Ward—Resulting Trust—Notice of Trust by Mortgagee—Consent of Infant—Statute of Frauds.**

The appellant, Mattie F. Reeves, while an infant, inherited from her grandfather about $4,500 in money. She had no statutory guardian, and her father took charge of her property and bought a tract of land and paid the purchase price out of funds belonging to her. He afterwards mortgaged this land to Williams and Barnet, who had notice that it had been paid for out of the infant's money. They

made an assignment and their assignee brought this suit to fore-
close the mortgage, and the appellants were made parties thereto.
Held, that the father held the money as the natural guardian of his
daughter, and that when a guardian purchases land with the money
of his ward, the ward may either take the land or consider it as
security for the money; that a father's possession of his infant child's
property as natural guardian does not subject it to his creditors, nor
make a sale effectual against the child; that an infant cannot con-
sent to the disposition of its property; that a trust resulted in favor
of the infant and she is entitled to her money invested in this land.

APPEAL FROM McLEAN CIRCUIT COURT.

November 9, 1871.

OPINION BY JUDGE PRYOR:

H. W. Tomlin, being indebted to the firm of Williams & Bar-
net in two notes, one for $1,000.00 and the other for five hun-
dred dollars, in order to secure their payment executed to the
latter two separate mortgages upon the same tract of land, as
described in the mortgages and exhibits filed, as the land pur-
chased by Tomlin of F. M. Sluader and wife, and containing
146¼ acres. One of the mortgages was dated on the 10th of
February, 1866, and the other on the 10th of October, 1866.

Williams & Barnet, after the execution of these mortgages,
were declared bankrupts, and the appellee, Moore, was their
assignee, and they also, by an assignment in writing, transferred
to him the debts of Tomlin for the benefit of their creditors.
Moore, as assignee of Williams & Barnet, filed the present suit
in equity to foreclose these mortgages, and while the suit was
pending, the appellants, Mattie F. Reeves, and her husband,
filed their petition to be made parties, and their petition is made
their answer and also a cross-petition against Williams & Barnet
and Moore, their assignee. This cross-petition alleges, that in
the year 1863, Mattie Reeves (one of the appellants), who is a
daughter of Tomlin, inherited from her grandfather, who died
in the state of Maryland, about $4,500.00 in money and a number
of slaves; that when she was about 18 years of age and without
any statutory guardian, she accompanied her father to the state
of Maryland and there had a settlement with those in charge of
her grandfather's estate, and received in checks, payable to her-
self, about $4,500.00 in money, and the negroes; that she en-

dorsed the checks to her father and he collected the money, or obtained other checks, and, upon his return to Kentucky, deposited the money in checks with the firm of Williams & Barnet, the sum of $3,000.00; that when her father purchased this land of Sluader, in the year of 1863, in payment therefor he drew upon Williams & Barnet for two thousand dollars of the money deposited with them, and the same was paid by them to Sluader; that Williams & Barnet knew when they took the mortgages from the father on this land that it was her money that paid for it and that it was her money that had been deposited with them. One thousand dollars of the three thousand deposited with Williams & Barnet was applied by them to the payment of accounts for merchandise due them by Miss Reeves and her father. The proof shows that Miss Reeves was under 21 years of age when the money was paid her father, and about 18 years of age when the land was purchased of Sluader in the year 1863; that she had no statutory guardian; that twenty-five hundred dollars of her money has been used by her father in addition to the money invested in the Slauder land; that her negro slaves is all accounted for, and all this waste of her estate occurring during her minority. When Mrs. Reeves married does not appear, but this answer and cross-petition was filed in about one year after her arrival of age.

She alleges in her cross petition that Williams & Barnet had full knowledge of the fact when they took these mortgages that the land had been bought and paid for with her money which had been deposited with them and which they well knew belonged to her. Barnet & Williams answer and do not deny this allegation. It is denied by the assignee who was, of course, a stranger to these transactions, but the history of the case as presented by the pleadings and testimony of the father, is sufficient to satisfy this court, that Williams & Barnet knew all about it. Tomlin, so far as the record shows, had but little, if any, property. His trip to Maryland with his daughter, after her estate, and his return and depositing the money with Williams & Barnet, the business men of the place where they all lived, all conduces to show that they must have known whose money it was and how it was obtained. The father held the money as the natural guardian of his daughter, and in the case of

*Edmonds vs. Morrison,* 5 Dana 224, this court decided that when a guardian purchased land with the money of the ward, the ward may either take the land or consider it as security for the money. And, again, in the case of *Forsyth vs. Kreakbaum,* 7 T. B. Monroe 97, this court says: "That a father's possession of his infant child's property as natural guardian does not subject it to his creditors, nor make the sale of it effectual as against the child. In this case, the infant daughter of Tomlin had no power to controll her father in the disposition he was making of her estate and for this reason it cannot be argued that she gave her consent to the appropriation of the monies for his individual purposes. Nor is this case affected by section 20, chapter 80, of the Revised Statutes, which reads: "That where a deed is made to one person, and the consideration therefor should be paid by another, no use or trust shall result in favor of the latter." The 22d section of the same chapter provides expressly that the provisions of section 20 shall not extend to cases where the grantee shall have taken a deed in his own name, without the consent of the person paying the consideration, or where the grantee is violation of some trust, shall have purchased the lands deeded with the effects of another person. This act, instead of sustaining the view of this case as presented by appellees' counsel, is here quoted as authority in favor of sustaining the equitable rights of the appellants as against the creditors of and purchasers from her father. We are satisfied that the appellant is entitled to her money invested in this land by the father with interest from June 1, 1863, the date of the purchase, and conveyance of the land by Sluader and wife to Tomlin. It is unnecessary to commit this case to a commissioner, as the father has already spent $2,500.00 of her money as well as the hire of her negroes.

One thousand dollars of this sum Barnet & Williams obtained from him, and no greater expenditure would be sanctioned by this court of the ward's money. The judgment of the court below, dismissing appellants' cross-petition, is reversed and the cause remanded with directions to render a judgment in favor of appellants thereon for $2,000.00, with interest from June 1, 1863, until paid, and the land bought of Sluader and wife to be held in lien for the payment of the same and costs. The court

below will sell the land, first to pay the debts of appellant and then the debt of appellee.

*S. J. Boyd, for appellant.*

*Brickens, for appellees.*